**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELA VIDOR, | No. C 11-315 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| AMERICAN INTERNATIONAL GROUP, *et al*., | |
| Defendants. / | |

On July 1, 2011, the Court held a hearing on defendant's motion to dismiss the first amended complaint. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion to dismiss without leave to amend.

**BACKGROUND**

On April 15, 2011, *pro se* plaintiff Bela (Bill) Vidor filed this First Amended Complaint ("FAC") against defendants American International Group ("AIG") and Robert "Steve" Miller, Chairman of the AIG Board of Directors. Plaintiff alleges that he purchased AIG stock on October 12, 2009, and that he understood it to be preferred stock because of AIG's use of the ticker symbol "AIGPrA." FAC ¶¶ 12-13.[1] The initial prospectus for AIGPrA was issued July 13, 2007. The FAC

---

[1] As the Court noted at the hearing on this matter, the FAC contains inconsistent dates regarding when plaintiff first purchased AIG stock. In response to the Court's inquiries, plaintiff stated that he purchased AIG stock in October 2009, and that he became interested in purchasing AIG stock after he learned of the government's bailout of AIG. Plaintiff stated that when he heard of the bailout, he contacted his broker at Fidelity and asked whether AIG issued preferred stock. According to plaintiff, his Fidelity broker told him that AIG issued preferred stock, and gave plaintiff the AIGPrA ticker symbol for that stock. Plaintiff stated that he then conducted online research about the stock, and then

alleges that in June 2010, plaintiff phoned the AIG investors' relations department and was informed that there would be an "obligatory exchange–or mandatory 'stock swap'– of his AIGPrA shares for common shares, to be exchanged at a settlement rate value of .03289." FAC ¶¶ 9-11. The FAC alleges that plaintiff "has already lost and continues to lose approximately 21%" of the value of his AIGPrA shares, and that his loss is because of his detrimental reliance "upon numerous representations made to him by AIG representatives" that his AIGPrA shares were preferred. FAC ¶ 15. The FAC alleges claims for negligent misrepresentation, fraud, breach of fiduciary duty, violation of the Trust Indenture Act of 1939, and promissory estoppel.

AIG has submitted evidence showing that, contrary to plaintiff's allegations, plaintiff did not purchase AIG preferred stock, but instead purchased hybrid "Equity Units," each consisting of (1) a fractional interest in certain AIG subordinated debentures and (2) a forward contract obligating shareholders to purchase AIG common stock on three specified dates in 2011 at a price fixed by the terms of a prospectus. Cox Decl. Ex. 3. Defendant has filed, *inter alia*, the registration statement and the prospectus for the Equity Units. The cover page of the prospectus states "The stock purchase contract will obligate you to purchase from us, and us to sell to you, on each of February 15, 2011, May 1, 2011, and August 1, 2011 (each, a *'stock purchase date'*) for $25 in cash on each of the three stock purchase dates, a variable number of shares of our common stock, subject to anti-dilution adjustments, each to the applicable settlement rate, calculated as follows: [three different formulas depending on the applicable market value of common stock]." Cox Decl. Ex. 4 at cover page (emphasis in original). The prospectus also explicitly warns investors that "[holders] will bear the entire risk that the market value of [AIG's] common stock may decline." *Id*. at S-22.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

purchased the stock. Plaintiff did not name Fidelity or his individual broker as a defendant in this action.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**DISCUSSION**

**1.   Negligent misrepresentation and common law fraud**

Plaintiff alleges claims for common law fraud and negligent misrepresentation. Both claims allege that AIG and its representatives used the AIGPrA symbol to designate preferred AIG stock, "which they knew not to be preferred shares but in fact debentures." FAC ¶ 19; *see also id*. ¶¶ 18, 20, 21-26. Plaintiff also alleges that he relied upon "numerous representations made to him by AIG representatives and its designation of his AIG securities as preferred shares . . . ." *Id*. ¶ 15.

The elements of a common law fraud claim are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am., N.A.*, 42 Cal. Rptr. 3d 310, 317 (Ct. App. 2006) (citation omitted). "The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar. . . . [B]oth torts are defined as deceit. However, the state of mind requirements are different." *Intrieri v. Superior Court*, 117 Cal. App. 4th

72, 85 (2004) (footnote reference omitted).  "Negligent misrepresentation lacks the element of intent to deceive. Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Id*. at 86  (citations, alteration, and internal quotation marks omitted).

Defendant moves to dismiss the negligent misrepresentation and common law fraud claims on numerous grounds.  Defendant argues that plaintiff cannot, as a matter of law, establish justifiable reliance.  Defendant argues that plaintiff's reliance on the ticker symbol is unreasonable where the prospectus clearly states the terms of the Equity Units, and nowhere refers to the units as preferred stock.  In addition, at the hearing defendant argued that there is no reliance on any alleged oral misrepresentations by AIG agents and representatives because plaintiff stated at the hearing that those alleged oral misrepresentations occurred after plaintiff purchased AIG stock.  Defendant also argues that plaintiff did not plead fraud in satisfaction of the heightened particularity requirement of Fed. R. Civ. P. 9(b) because the claim fails to name the agents or representatives of AIG who allegedly made misrepresentations to him, and when and where those misrepresentations were made.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Court agrees that plaintiff cannot state a claim for negligent misrepresentation or common law fraud because there is no justifiable reliance.  "[K]nowledge of information contained in a prospectus or an equivalent document authorized by statute or regulation, should be imputed to investors who fail to read such documents.  We thus hold that [plaintiff] must be charged with constructive knowledge of the risks and warnings contained in the [prospectus]." *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518 (10th Cir. 1983).  Plaintiff asserts that he should not be charged with constructive knowledge of the information in the prospectus because he is an unsophisticated investor, and "*Zobrist* also points out specifically, however, that the Court should also consider the sophistication and expertise of the plaintiff in financial and securities matters, the length of the business relationship with the company, and other factors in determining whether the investor is to be imputed with knowledge of [the] prospectus." Opp'n at 11:18-22.  However, as defendant correctly notes, *Zobrist* held that the factors

4

that plaintiff mentions, such as the investor's level of sophistication, should be considered in determining the reasonableness of an investor's reliance on misrepresentations that contradict the prospectus; *Zobrist* did not hold that those factors shield an unsophisticated investor from having the information in the prospectus imputed to him in the first place. *Zobrist*, 708 F.2d at 1516-17.

Thus, the information in the prospectus stating the terms of the Equity Units is imputed to plaintiff. In light of the explicit warnings in the prospectus that purchasers of the Equity Units "will bear the entire risk that the market value of [AIG] common stock may decline, and that decline could be substantial and could result in a loss of all or a portion of your investment," Prospectus at S-22 (Cox Decl. Ex. 4), plaintiff's reliance on the ticker symbol as a representation that the stock was preferred and that he would be entitled to full par value is unjustified. Similarly, plaintiff cannot establish reliance on any alleged misstatements by AIG representatives because, by his own admission, those alleged misstatements were made after he purchased the Equity Units.

Accordingly, the Court GRANTS defendant's motion to dismiss the negligent misrepresentation and fraud claims without leave to amend.

### 2.     **Breach of fiduciary duty**

Plaintiff alleges that defendant "did not exercise the care required of directors in that they held a duty to make truthful and accurate disclosures to plaintiff concerning the nature of his investment in defendant AIG's securities." FAC ¶ 30. Defendant correctly argues that plaintiff is owed no such duty under Delaware law.[2] The investment that plaintiff purchased constitutes "a mere expectancy interest [that] does not create a fiduciary relationship." *Simons v. Cogan*, 549 A.2d 300, 304 (Del. 1988). The convertible nature of the Equity Units that plaintiff purchased grants a contractual right to purchase an equitable interest (stock) at a later date in time. Until the investment is "converted into stock the . . . holder acquires no equitable interest . . . ." *Id.* Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's claim for breach of fiduciary duty without leave to amend.

---

[2] *In re Verisign, Inc., Deriv Litig.*, 531 F. Supp. 2d 1173, 1214-15 (N.D. Cal. 2007) (the law of the state of incorporation applies to causes of action concerning a company's internal affairs, "including the claims for breach of fiduciary duty"); *see also Shaffer v. Heitner*, 433 U.S.186, 215 n.44 (1977).

5

### 3. Trust Indenture Act of 1939

Plaintiff alleges that defendant violated the Trust Indenture Act of 1939 (TIA) when plaintiff was forced to participate in a mandatory stock swap without express written agreement. "The Trust Indenture Act provides a cause of action for persons who purchase securities issued under an indenture if the purchaser relies on misleading statements or omissions and suffers actual damages." *In re Nucorp Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985) (citing 15 U.S.C. § 77www). Section 304(a) of the TIA provides that the Act does not apply to "any certificate of interest or participation in two or more securities having substantially different rights and privileges, or a temporary certificate for any such certificate." 15 U.S.C. § 77ddd(a)(2).

Here, the Equity Units that plaintiffs purchased are comprised primarily of Corporate Units which consist of (1) a stock purchase contract and (2) debentures. *See* Pl. Ex. 1 Prospectus Supplement at 1. The mixed nature of the investment vehicle brings it under the explicit exemptions listed in TIA including "any certificate of interest or participation in two or more securities having substantially different rights and privileges, or a temporary certificate for any such certificate" 15 U.S.C. § 77ddd(a)(2). Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's TIA claim without leave to amend.

### 4. Promissory estoppel

Plaintiff alleges that defendant is estopped from claiming that the Equity Shares are not preferred stock because of the use of the AIGPrA ticker symbol and because of the subsequent representations that plaintiff's AIGPrA shares were preferred. FAC ¶ 39.

To establish a claim for promissory estoppel, a party must plead: "(1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 (9th Cir. 1992).

Defendant contends that this claim must be dismissed because AIG has made no promise to plaintiff to provide preferred shares of stock. The Court agrees. The use of a ticker symbol for an

6

investment vehicle does not constitute an "clear and unambiguous" promise to sell preferred stock. *Torres v. Litton Loan Servicing LP*, 5:09-CV-00288 JF (HRL), 2011 WL 1403059, at *2 (E.D. Cal. Apr. 13, 2011) (claims for promissory estoppel must be based on a "clear and unambiguous promise"). Additionally, any allegation that plaintiff was promised preferred stock is contradicted by the prospectus. *Grill v. BAC Home Loans Servicing LP*, 10-CV-03057-FCD/GGH, 2011 WL 127891, at *8 (E.D. Cal. Jan. 14, 2011) (dismissing a promissory estoppel claim where "the plain terms" of a term sheet negated any allegation of a contrary promise). Accordingly, the Court GRANTS defendant's motion to dismiss the promissory estoppel claim without leave to amend.

**5.  Leave to amend**

The Court has previously granted plaintiff leave to amend the complaint. Docket No. 25. The Court concludes that further leave to amend would be futile because plaintiff cannot, as a matter of law, allege essential elements of the claims alleged in the FAC.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss plaintiff's claims without leave to amend. Docket No. 32.

**IT IS SO ORDERED.**

Dated: July 13, 2011

SUSAN ILLSTON
United States District Judge

7